IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LARRY S. WHITE, II

     Petitioner,

v.           CIVIL ACTION NO.  2:21-cv-00523

SHELBY SEARLS,

     Respondent.

MEMORANDUM OPINION AND ORDER

Pending before the court are Larry Samuel White's Petition for Writ of Habeas Corpus [ECF No. 2] and Respondent's Motion to Dismiss and for Summary Judgment [ECF No. 16]. This action was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for submission to this court of Proposed Findings and Recommendation ("PF&R") for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed each of the eleven grounds asserted by Mr. White in his Petition, the magistrate judge submitted his PF&R. The judge found all eleven grounds to lack merit and recommended that the court grant Respondent's Motion and remove this case from the docket. [ECF No. 25]. Subsequently, Mr. White filed objections to the PF&R. [ECF No. 28]. Because Mr. White objected to the magistrate judge's analysis of all eleven grounds, this court has reviewed *de novo* the analysis of each ground in the PF&R, and agrees with the magistrate judge's recommendation to dismiss Mr.

White's Petition [ECF No. 2]. For one ground asserted by Mr. White—Ground Eleven, for ineffective assistance of counsel—this court modifies the reasoning employed in the PF&R but ultimately reaches the same conclusion that Mr. White cannot be granted relief on that ground. Accordingly, the court **ADOPTS** Judge Aboulhosn's PF&R [ECF No. 25] as modified herein as to the analysis of Ground Eleven. The court **GRANTS** the respondent's Motion to Dismiss and for Summary Judgment [ECF No. 16], and **ORDERS** that Mr. White's Petition for Writ of Habeas Corpus [ECF No. 2] be **DISMISSED** and **STRICKEN** from the docket of this court.

## I.   Background

After *de novo* review of those portions of Judge Aboulhosn's report to which objections were filed, the court **ADOPTS** the statement of facts and procedural history set forth in the PF&R. The detailed account provided by the Magistrate Judge therein requires only a brief summary here.

In 2008, Petitioner was tried before a jury in the Circuit Court of Jackson County, West Virginia, and convicted of first degree murder and conspiracy to commit murder. [ECF No. 16-17]. According to the evidence at trial, Mr. White and the victim's wife, Roseann Osborne, had a romantic relationship and shared a young child, while Ms. Osborne remained married to the victim, Mohammed Mahrous. [ECF No. 25, at 15–16 (quoting *State v. White*, 722 S.E.2d 566, 571–71 (W. Va. 2011))]. Sometime after 9:15 p.m. on September 17, 2007, Ms. Osborne and Mr. Mahrous met at Riverfront Park in Ravenswood, West Virginia. *Id.* at 16. While they were at the

park, Mr. White forcefully hit Mr. Mahrous's head three times with a hammer wrapped in a plastic bag, causing Mr. Mahrous's death. *Id.* The plastic bag, stained with traces of Mr. Mahrous's blood, was discovered on the river bank, and a subsequent search of the river produced the hammer, with a piece of the plastic bag stuck to it. Following the attack, Mr. White left the park. Ms. Osborne called 911 and reported that her husband had been attacked by an unknown assailant who first asked him for a cigarette. She gave a description of the assailant that did not match Mr. White. *Id.*

The vehicles driven by Ms. Osborne and Mr. Mahrous were both transported to the city maintenance garage in Ravenswood, West Virginia. *Id.* Pursuant to a warrant, police searched the vehicle driven by Ms. Osborne, but owned by Mr. Mahrous, and seized a cellular phone. A subsequent search of that phone led investigators to Mr. White in the State of Indiana. Officers interviewed Mr. White for six hours and he confessed to killing Mr. Mahrous by striking him in the head with a hammer. *Id.*

At trial, Mr. White did not dispute that he killed Mr. Mahrous, but instead presented a diminished capacity defense, arguing that he lacked the ability to premeditate and deliberate Mr. Mahrous's murder. *Id.* The jury found him guilty of murder in the first degree with a recommendation of mercy, and also found him guilty of conspiracy to commit a felony. [ECF No. 16-17]. The court denied Mr. White's motion for a new trial and sentenced him to life with mercy for first-degree murder,

and a term of not less than one year nor more than five years for the conspiracy charge, with the sentences to run consecutively. [ECF No. 25, at 16].

On February 1, 2010, Mr. White, by counsel Matthew Clark, who also represented him at trial, filed a Petition for Appeal with the Supreme Court of Appeals of West Virginia. [ECF No. 25, at 3]. The court granted the Petition. After briefing, the court rejected Petitioner's assignments of error and affirmed his conviction and sentence. *Id.*

On March 3, 2011, Petitioner, acting *pro se*, filed his Petition for Writ of Habeas Corpus in the Circuit Court of Jackson County. The court appointed Shawn Bayless as habeas counsel. Mr. Bayless filed an Amended Habeas Petition on behalf of Petitioner, asserting fifteen grounds for relief. *See* [ECF No. 16-20]. The circuit court conducted an omnibus hearing on August 14, 2014, during which Petitioner and Mr. Clark each testified. *See* [ECF No. 16-27]. By order entered October 28, 2014, the circuit court denied Mr. White's habeas petition. [ECF No. 25, at 6]. The West Virginia Supreme Court of Appeals affirmed that decision. *Id.*

On August 16, 2016, Petitioner, acting *pro se*, filed a second Petition for Writ of Habeas Corpus in the Circuit Court of Jackson County. *Id.* at 6. The court appointed M. Tyler Mason as habeas counsel. *Id.* at 6–7. Mr. Mason filed an Amended Habeas Petition asserting four grounds for relief, all based on previous habeas counsel's failures to raise claims alleging ineffective assistance of trial counsel. *Id.* at

4

7. The court dismissed the Petition, *see* [ECF Nos. 16-29, 16-32], and the West Virginia Supreme Court of Appeals affirmed, [ECF No. 25, at 8].

On September 17, 2021, Petitioner, acting *pro se*, filed his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody. [ECF No. 2]. Petitioner asserts eleven grounds for relief.[1]

## II.   Legal Standards

### A.  Federal *Habeas* Relief

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs all federal habeas corpus petitions filed after April 24, 1996. *See Lindh v Murphy*, 521 U.S. 320 (1997). Under the AEDPA, a federal court may grant habeas relief to state prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If a petitioner's claim "rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review." *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

When the federal issues raised in a § 2254 petition were raised and "adjudicated on the merits in State court proceedings," federal habeas relief is available only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] Mr. White's Petition also includes arguments under the heading of "Ground Twelve," but the information therein appears to support Ground Eleven rather than assert any distinct claim. *See* [ECF No. 2, at 18–21].

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, AEDPA requires a federal habeas court to presume that a state court's factual findings are correct. *See id.* § 2254(e). A habeas petitioner may overcome that presumption of correctness only by submitting clear and convincing evidence. *Id.*

State prisoners seeking relief under § 2254 must also overcome "several procedural obstacles." *Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009). These incarcerated individuals must exhaust their available remedies in state court before filing a § 2254 petition. *See* 28 U.S.C. § 2254(b)(1)(A). The petitioner bears the burden of proving that his claims were fairly presented in state court. *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). To be fairly presented, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (internal quotation marks omitted). If the claims were not fairly presented in state court, they are procedurally defaulted and a federal habeas court is generally barred from adjudicating them. *Id.* A § 2254 petitioner can overcome a procedural default by showing cause for the default and prejudice resulting from the error, or by establishing that his conviction and sentence constitute "a miscarriage of justice." *Id.*

### B. Magistrate Judge's Recommendations

When a magistrate judge issues a recommendation on a dispositive matter, the court reviews *de novo* those portions of the magistrate judge's report to which specific objections are filed. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). When a party fails to object to a portion of the magistrate judge's report, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### C.  Motion to Dismiss

"In § 2254 proceedings, the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss. *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (citing *Walker v. True*, 399 F.3d 315, 319 n.1 (4th Cir. 2005). "Thus, a motion to dismiss a § 2254 petition under Rule 12(b)(6) tests the legal sufficiency of a petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true.'" *Id.* (quoting *Wolfe*, 565 F.3d at 169). "In assessing whether the § 2254 petition states a claim for relief, the district court must consider 'the face of the petition and any attached exhibits.'" *Id.* Because Respondent filed a Limited Response [ECF No. 9], containing exhibits on which it now relies in its Motion, Respondent "technically should have filed the motion under Rule 12(c) as one for judgment on the pleadings." *Kelly*, 589 F.3d at 139 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). The court construes Respondent's

motion as a motion under Rule 12(c) which is assessed under the same standard that applies to a Rule 12(b)(6) motion. *Id.*

### D. Motion for Summary Judgment

Respondent files the instant Motion as one "to Dismiss and for Summary Judgment." [ECF No. 16]. Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and "applies to habeas proceedings." *Brandt v. Goodwin*, 636 F.3d 124, 132 (4th Cir. 2011). To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

### III.  Discussion

Magistrate Judge Aboulhosn recommended that I dismiss all eleven grounds for relief asserted in Mr. White's Petition. [ECF No. 25]. Mr. White filed specific objections to the PF&R on all grounds. [ECF No. 28]. Upon *de novo* review, I have determined that Petitioner's objections lack merit, except for his objections to the magistrate judge's analysis of Ground Eleven. I will discuss this ground first, before

briefly explaining why Petitioner's remaining grounds do not warrant federal habeas relief.

### A. Ground Eleven: Ineffective Assistance of Counsel

In Ground Eleven of his Petition, Mr. White argues that his prior habeas counsel, Mr. Bayless, "failed to raise numerous assignments of error relating to the ineffective assistance [that] Petitioner received from his trial counsel Matthew Clark and Jeremy Vickers." [ECF No. 2, at 12]. Mr. White alleges three distinct errors committed by trial counsel: (1) failing to conduct proper *voir dire* on prospective juror Cassia Scott, and failure to raise the proper grounds to strike her for cause; (2) waiving Petitioner's presentence investigation; and (3) failing to object to inappropriate and irrelevant statements by the prosecutor. The magistrate judge concluded that Petitioner could not assert an "independent cognizable claim" for ineffective assistance of habeas counsel. [ECF No. 25, at 41].

Neither the magistrate judge nor Respondent addresses the underlying errors alleged. Instead, their analyses rely on § 2254's explicit provision that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief." 28 U.S.C. § 2254(i); *see* [ECF No. 17, at 23].

In the instant Motion, Respondent cites the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), for the proposition that "ineffective assistance of habeas counsel is only viable in the context of excusing a procedural default, and

9

cannot be relied upon in federal habeas corpus as a 'ground for relief.'" [ECF No. 17, at 23]. Although Respondent accurately characterizes *Martinez*, he did not recognize the case's implications for Petitioner. Typically, failure to raise a ground for relief in state court means that ground is procedurally defaulted in federal habeas proceedings, and "negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" *Maples v. Thomas*, 565 U.S. 266, 280 (2012). *Martinez*, however, recognizes a "narrow exception" whereby "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. In reaching its holding, the Court emphasized the following "key difference between initial-review collateral proceedings and other kinds of collateral proceedings":

> When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim. This Court on direct review of the state proceeding could not consider or adjudicate the claim. And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims.
>
> The same is not true when counsel errs in other kinds of postconviction proceedings. While counsel's errors in these proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding.

*Id.* at 10–11 (internal citations omitted). The Court also observed that "[a] prisoner's inability to present a claim of trial error is of particular concern when the claim is

one of ineffective assistance of counsel," in part because "[e]ffective trial counsel preserves claims to be considered on appeal." *Id.* at 12.

Under Ground Eleven of his § 2254 Petition, Mr. White asserts three errors by trial counsel which he argues provide grounds for relief.[2] He further contends that counsel failed to raise these grounds in his first state habeas proceeding—i.e., in an initial-review collateral proceeding. In Petitioner's second state habeas proceeding, he raised these errors by trial counsel, but the court found Petitioner had waived the grounds by failing to raise them in the initial habeas proceeding. Mr. White's claims therefore "fall squarely in the provisions of *Martinez*." [ECF No. 28, at 2].

Respondent appears to emphasize the somewhat imprecise language in Mr. White's pleadings; Petitioner sometimes conflates a "ground for relief" with "cause" for a procedural default when referring to his "claims of ineffective assistance of habeas counsel." *See* [ECF No. 28, at 2]. But any ambiguities are superficial, particularly given Petitioner's status as a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed.'" (quoting *Estelle*, 429 U.S. at 106)). Mr. White plainly asserts grounds for relief based on trial counsel's ineffective assistance. *See White v. Searls*, No. 19-1147, 2021 WL 2023585, at *4 (W. Va. May 20, 2021) ("Although his petition is couched in terms of habeas counsel, the arguments actually detail the alleged ineffectiveness of trial counsel.").

---

[2] The court construes "Ground Eleven" to contain three separate grounds for relief, based on errors related to (a) prospective juror Cassia Scott, (b) Petitioner's presentence investigation, and (c) inadmissible prosecutorial statements. For clarity, the court will refer to these grounds as 11a, 11b, and 11c, respectively.

Accordingly, in a federal habeas proceeding, Petitioner is permitted to establish cause for defaulting on those grounds by showing that "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a "substantial one," which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 US. 322 (2003)). If Petitioner can show cause to excuse the default, the federal court may consider his claims on their merits.

Because the magistrate judge found that Ground Eleven did not present a cognizable claim, he rejected the ground without determining whether there was cause for the default. It is apparent from the record, however, that Petitioner cannot establish cause to excuse default for any of the three errors asserted. Accordingly, although I modify the reasoning employed in the PF&R, I reach the same result for all three claims, each of which I will now discuss.

### i.   Ground 11a: Prospective Juror Cassia Scott

Petitioner argues that "trial counsel Matthew Clark and Jeremy Vickers . . . failed to conduct proper voir dire on Juror Cassia Scott, and then failed to raise proper grounds on the record to strike Ms. Scott for cause." [ECF No. 2, at 12]. Petitioner has expressed multiple concerns about Ms. Scott as a potential juror: "she was a Jackson County Courthouse employee and ha[d] knowledge of Petitioner's case"; she "had a

negative response to the fact that the case would show an extramarital relationship was engaged in by the Petitioner"; and she "answered ambiguously when informed psychological testimony would be part of Petitioner's defense." [ECF No. 25, at 41–42]. Trial counsel did move to strike Ms. Scott for cause, but only on the basis of her response regarding psychological testimony. The trial court denied counsel's motion to strike for cause, which "forced" Petitioner to "waste" a peremptory challenge to remove Ms. Scott from the jury. [ECF No. 2, at 13]. On appeal, counsel raised the issues that Ms. Scott should have been stricken for cause because of her prior knowledge of the case and because of her "equivocal" response to Petitioner's extramarital affair.[3] But the Supreme Court of Appeals of West Virginia refused to consider the assignments of error because they were not raised at trial. *State v. White*, 722 S.E.2d at 574 n.5. When counsel failed to raise this error in Mr. White's first habeas proceeding, it was deemed waived in his second habeas proceeding. *White v. Searls*, 2021 WL 2023585, at *3.

To establish cause for procedural default, Petitioner must show that habeas counsel's failure to raise the ground demonstrated ineffectiveness under the *Strickland* standard, and that the underlying claim for ineffective assistance of trial counsel has merit under the same standard. Under *Strickland*, Petitioner must show

---

[3] Appellate counsel also raised the trial court's failure to strike Ms. Scott for cause based on her responses about psychological testimony. The Supreme Court of Appeals denied relief on this ground, "agree[ing] with the trial court's conclusion [that] Ms. Scott was clear in stating that she would consider the psychological evidence. She merely qualified this answer by pointing out that she had not yet heard the psychological evidence that would be presented in this case, and, therefore, could not express an opinion as to how she would perceive that evidence. We find no indication of bias or prejudice." *State v. White*, 722 S.E.2d at 575.

(1) that counsel's performance was deficient, i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "that counsel's deficient performance prejudiced the defense," i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial." 466 U.S. at 687. The court may address the two prongs in either order. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. "An error by counsel, even if professionally reasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Because Petitioner's claim of ineffective assistance is grounded in the claim that counsel failed to strike a biased juror, he "must show that the juror was actually biased against him." *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) (quoting *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995)).

"Judicial scrutiny of counsel's performance must be highly deferential . . . the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "Counsel is also accorded particular deference when conducting *voir dire*. A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes*, 258 F.3d at 457 (citing *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997)).

14

As to the prejudice prong of the *Strickland* standard, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see generally Murphy v. Florida*, 421 U.S. 794, 800–03 (1975) (holding defendant failed to raise an inference of prejudice where jurors "had some knowledge of petitioner's past crimes" and "one juror conceded that his prior impression of petitioner would dispose him to convict").

In this case, Petitioner cannot establish cause for default on this claim. Even if he could show that habeas and trial counsel performed deficiently, he cannot show any likelihood of prejudice. Although Petitioner needed to use a peremptory challenge, Ms. Scott was stricken from the jury and did not take part in deciding Mr. White's case. While "counsel's 'failure to attempt to bar the seating of obviously biased jurors constitute[s] ineffective assistance of counsel of a fundamental degree,'" *Hughes*, 258 F.3d at 463 (quoting *Johnson v. Armontrout*, 961 F.2d 748, 756 (8th Cir. 1992)), this is not what occurred here, even if Ms. Scott was actually biased. Mr. White cannot show a reasonable probability that, had counsel moved to strike Ms. Scott on the "proper" grounds, and had the trial court agreed, Petitioner would have been able to use that additional peremptory strike to select a jury that would have arrived at a different result. Although not directly on point, it is well established that a defendant's right to an impartial jury is not violated where a defendant uses a

peremptory challenge to remove a potential juror due to the trial court's failure to remove that juror for cause. *See United States v. Martinez-Salazar*, 528 U.S. 304 (2000); *see also Hughes*, 258 F.3d at 464 (defending reliance on *Martinez-Salazar* to analyze ineffective assistance of counsel on the basis that "[t]hese Sixth Amendment requirements apply regardless of whether blame for a biased jury is assigned to counsel or the court, who ultimately share the *voir dire* responsibility of removing biased venirepersons"). Moreover, even if Ms. Scott's responses raise a specter of bias, review of the transcript from *voir dire* does not leave the court "with a clear and definite impression that [she] would be unable faithfully and impartially to apply the law." *State v. White*, 722 S.E.2d at 575. In responding to certain jurors about their exposure to the case, the court explained that "in a small community . . . it is not unusual that people have heard about these cases before they come in for jury duty, and the fact you have heard about it doesn't disqualify you from jury service necessarily." [ECF No. 16-12, at 43:13–18]. When trial counsel followed up specifically with Ms. Scott, she denied ever actually participating in the filing of documents in this case, noting that "everything is sealed," and she did not recall any particulars of the case ever being discussed in her presence. *Id.* at 233:11–235:10.

In light of the foregoing, any failure by counsel is not "so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes*, 258 F.3d at 457. My conclusion is bolstered by Supreme Court precedent establishing the substantial showing required to demonstrate actual bias and to overcome the "'strong

presumption' that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see, e.g.*, *Patton v. Yount*, 467 U.S. 1025 (1984) (finding no "manifest error" in trial court's findings of impartiality even where "8 of the 14 jurors and alternates actually seated admitted that at some time [before trial] they had formed an opinion as to [defendant's] guilt"); *Murphy*, 421 U.S. at 800 ("[T]he mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is [not] sufficient to rebut the presumption of a prospective juror's impartiality."). Accordingly, while I do not adopt the magistrate judge's reasoning that a petitioner can never assert ineffective assistance of habeas counsel when seeking relief in federal court, I agree with his recommendation to grant Respondent's Motion as to Ground 11a.

### ii.    Ground 11b: Waived Presentence Investigation

Mr. White next argues that "[t]rial counsel's decision to waive presentence investigation was deficient under an objective standard of reasonableness; and there is a reasonable probability that, but for counsel's professional errors, the result of the underlying criminal proceedings would have been different." [ECF No. 2, at 14]. Specifically, Mr. White asserts that his lack of "significant criminal history" or "substance abuse issues," as well as his "good employment history" were never presented to the sentencing court. *Id.* He also states that "trial counsel did not counsel him about the benefits of a presentence report." [ECF No. 24, at 11].

17

Petitioner acknowledges that on both counts of conviction, his sentences reflect the precise terms of imprisonment established by law. *See id.*; [ECF No. 9-3 (showing Mr. White's sentences of life with mercy for first-degree murder and one to five years for conspiracy to commit a felony)]; W. Va. Code § 61-2-2 ("Murder of the first degree shall be punished by confinement in the penitentiary for life."), § 61-10-31 (providing the offense of conspiring to commit a felony "shall be punished by imprisonment in the penitentiary for not less than one nor more than five years"). Accordingly, Mr. White's challenge focuses on the sentencing court's discretionary decision to impose consecutive rather than concurrent sentences. *See* [ECF No. 2, at 14 ("Had the Petitioner been granted the opportunity to undergo a presentence investigation, there is a reasonable probability that he would have received concurrent sentences.")]; *see also* W. Va. Code § 61-11-21 ("When any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the second, or any subsequent conviction, shall commence at the termination of the previous term or terms of confinement, unless, in the discretion of the trial court, the second or any subsequent conviction is ordered by the court to run concurrently with the first term of imprisonment imposed.").

From the extensive record before the court, it is apparent that Mr. White cannot show a reasonable probability that a presentence investigation would have led him to receive concurrent rather than consecutive sentences. Although absent from that record is a transcript from Petitioner's sentencing hearing, the trial transcripts

and other presentence documents, I can determine that the sentencing court had most of the relevant information before it. *See* [ECF No. 9-3 (sentencing order)]. The trial court was aware of Mr. White's "sporadic" employment history, and multiple witnesses testified about his mental condition. [ECF No. 16-15]; *see also Cullen v. Pinholster*, 563 U.S. 170, 200 (2011) (finding "no reasonable probability" of a different verdict based on "'new' evidence [which] largely duplicated the mitigation evidence at trial"). In the first state habeas proceeding, trial counsel testified to his concerns that allowing Mr. White to give a "personal recounting of his involvement in the crime" and "fully explain his motives for participating in these acts to the court," [ECF No. 2, at 14], could have undermined mitigating factors related to Mr. White's mental state. [ECF No. 16-27]; *see also Cullen*, 563 U.S. at 202 ("[S]ome of the new testimony would likely have undercut the mitigating value of the testimony by [defendant]'s mother.").

Moreover, the court was well aware of the facts of this case, in which Mr. White conspired with Ms. Osborne to murder Mr. Mahrous, and did so by bludgeoning him with a hammer. By all accounts, Mr. White was expected to receive a sentence of life *without mercy. See* [ECF No. 16-27, at 30 ("[T]his is a hard case, probably a no-mercy case.")]. Accordingly, "[t]hat the Petitioner received mercy from the Jury in this case is evidence that trial counsel's strategy was not only an objectively reasonable strategy, but was a successful strategy." *White v. Plumley*, 2015 WL 7628834, at *8. As such, Petitioner does not establish either the unreasonableness of counsel's

19

performance nor any reasonable probability of a different result had the sentencing court had access to his employment history and limited criminal history.

Because I agree with the magistrate judge's recommendation to grant Respondent's Motion on Ground 11b, I adopt the PF&R with the above-discussed modification to the reasoning applied to Ground Eleven.

### iii.   Ground 11c: Prosecutorial Statements

Mr. White argues that "[t]rial counsel failed to object to the prosecutor's unfair statements at trial that constituted prosecutorial misconduct." [ECF No. 28, at 2]. Mr. White specifically takes issue with two statements made during closing argument. First, the prosecutor stated, "[t]he second time he decided to raise his hammer and hit them and give them a blow that was fatal, that's premedition. The State's proved it right there. It only takes a second to form premeditation." [ECF No. 16-16, at 50:19–23]. Petitioner argues "[t]his is a gross misstatement of the law." [ECF No. 2, at 15]. Mr. White also challenges the prosecutor's subsequent statement that "[Petitioner] didn't think about those children he claims to love so much." [ECF No. 16-16, at 50:24–51:1]. Petitioner contends this statement is irrelevant or, if relevant, then overly prejudicial and therefore inadmissible.[4] [ECF No. 2, at 16–17]. In sum, Mr. White seeks relief on the ground that trial counsel failed to object to both

---

[4] The admissibility of evidence in state court proceedings raises issues of state law, which are not cognizable in federal habeas proceedings. Accordingly, this court's analysis focuses on whether counsel's failure to object to these statements or raise them in state habeas proceedings violates Petitioner's federal right to counsel under the Sixth Amendment.

a "blatant misrepresentation of an essential element of the crime" and a "highly prejudicial comment." *Id.*

Unlike the other trial errors raised under Ground Eleven, this claim was previously presented in Mr. White's postconviction proceedings. In his first habeas petition, counsel asserted "inappropriate statements of the prosecutor" as a ground for relief. [ECF No. 25, at 5]. But counsel effectively abandoned the claim when he "failed to further elucidate the issue in the Petition or at the omnibus hearing." [ECF No. 2, at 15]. Nevertheless, because the issue was at least raised, it was not deemed waived in Mr. White's second habeas proceeding. After ordering additional briefing on the issue, the state habeas court assessed the prosecutorial statement regarding premeditation and concluded that "Mr. Bayliss's failure to put on evidence in support of this claim" did not amount to ineffective assistance of counsel under either prong of the *Strickland* inquiry. [ECF No. 16-32]. The Supreme Court of Appeals of West Virginia affirmed that ruling. *White v. Searls*, 2021 WL 2023585, at *4–5. Because this claim "was adjudicated on the merits in State court proceedings," I review the state court decision under the deferential standard set out by the AEDPA. 28 U.S.C. § 2254(d).

Under West Virginia law, "[f]our factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3)

absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." Syl. pt. 6, *State v. Sugg*, 456 S.E.2d 469, 474 (W. Va. 1995). The circuit court found that the challenged statement "fails to satisfy" any of the four factors. [ECF No. 16-32, at 9]. In affirming the circuit court's decision, the Supreme Court of Appeals went even further, concluding that "the statement was a correct statement of the law." *White v. Searls*, 2021 WL 2023585, at *5; *see* [ECF No. 16-32, at 8 ("This Court stops short of finding the Statement did not misconstrue the law.")]. "Even if the prosecutor's remarks were improper," the court found no clear prejudice given that "the prosecutor's statement was isolated and was confined to rebuttal," "the strength of the evidence was so strong that petitioner's guilt was evident absent the remarks," and "there is no evidence that the prosecutor deliberately placed the statement before the jury to divert attention to extraneous matters." *White v. Searls*, 2021 WL 2023585, at *5. Both courts noted the trial court's correct instructions to the jury regarding premeditation. *Id.* at *4; [ECF No. 16-32, at 8]. Having found no clear prejudice, the courts rejected Petitioner's claim that failure to raise these objections amounted to ineffective assistance of counsel.

"[I]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67–68. Given the Supreme Court

of Appeals' determination that the prosecutor's statement did not misrepresent West Virginia law, I need not even apply AEDPA deference to conclude that failure to raise this issue cannot support a claim for ineffective assistance of counsel. Accordingly, while I do not adopt the magistrate judge's reasoning of Ground Eleven, I reach the same conclusion that Ground 11c does not warrant habeas relief.

### B. Non-Cognizable Claims: Grounds Two, Three, and Six

Petitioner specifically objects to the magistrate judge's analysis of Grounds Two, Three, and Six, each of which the judge found did not present cognizable claims for relief in federal habeas review. *See* [ECF No. 28, at 4–6; ECF No. 25, at 22–36]. I agree with the magistrate judge's findings and recommendations regarding Grounds Two, Three, and Six of Mr. White's Petition, and I reject Mr. White's objections to these portions of the PF&R.

### i. Ground Two: Violation of Due Process by Admission of Unlawfully Obtained Evidence

In Ground Two, Petitioner argues that the trial court violated his due process rights under the Fourteenth Amendment by admitting evidence derived from a warrantless search of a cellular phone. [ECF No. 2, at 7–8]. The magistrate judge reviewed the procedural history of this issue and found the claim procedurally defaulted. I agree, and I reject Mr. White's objection that Judge Aboulhosn did not properly consider an intervening change in the law.

Investigating officers found the phone in the vehicle owned by the victim and driven by Ms. Osborne. The warrantless search of the phone's contents led police to the petitioner, as well as other inculpatory evidence. The trial court denied Petitioner's motion to suppress the evidence under the Fourth Amendment. On direct appeal, the West Virginia Supreme Court of Appeals "expressly h[e]ld that, when searching a vehicle pursuant to a valid search warrant, no additional search warrant is required to examine the contents of items that are properly seized in the execution of the warrant, including, but not limited to, cellular telephones." Syl. pt. 14, *State v. White*, 722 S.E.2d at 571. Accordingly, the issue was deemed res judicata on collateral review. *White v. Plumley*, No. 14-1272, 2015 WL 7628834, at *22 (W. Va. Nov. 23, 2015).

At trial and throughout postconviction proceedings, Petitioner's arguments regarding the cell phone invoked the Fourth Amendment. Newly framed as a due process violation under the Fourteenth Amendment, the claim is procedurally defaulted, as the magistrate judge correctly determined. Because "Petitioner never presented to the [Supreme Court of Appeals of West Virginia] his claim that the search of his cell phone violated his due process rights under the Fourteenth Amendment," Ground Two "is unexhausted and there is no allegation or indication that Petitioner should be excused from the exhaustion requirement." [ECF No. 25, at 28].

"Nevertheless, a claim that has not been presented to the state's highest court 'may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court.'" *Id.* (quoting *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000)). "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Baker*, 220 F.3d at 288 (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). As Judge Aboulhosn found, Petitioner has not shown cause and his claim is procedurally defaulted. [ECF No. 25, at 30–31].

The magistrate judge also considered whether Petitioner's claim is cognizable if construed as having been brought under the Fourth Amendment. *Id.* at 31. The judge, correctly, found federal habeas relief unavailable because "the State has provided an opportunity for full and fair litigation of [Petitioner's] Fourth Amendment Claim." *Id.* at 31 (citing *Stone v. Powell*, 428 U.S. 465, 494 (1976) (holding that in the context of federal habeas review, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force"); and then citing *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) (recognizing that *Stone* "marked, for most practical purposes, the end of federal court

reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court")).

Petitioner objects to the magistrate judge's analysis on the basis that "the claim was not fairly and fully adjudicated" because the West Virginia high court, when reviewing its 2011 appellate decision on collateral review in 2015, failed to consider an intervening United States Supreme Court ruling. In 2014, the Court decided *Riley v. California*, holding that the police generally may not, without a warrant, search digital information on a cell phone seized from an individual who has been arrested. 573 U.S. 373 (2014). But Judge Aboulhosn addressed this argument in the PF&R after Petitioner raised it in opposition to Respondent's Motion. Finding this case governed by *Boggs v. Bair*, the judge found, and I agree, that the change in the law does not change that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim. 892 F.2d 1193, 1200 (1989) (holding petitioner "was afforded every full and fair opportunity to litigate and have adjudicated the Fourth Amendment claim with respect to the search of his vehicle," despite the Supreme Court decision following his trial that established an additional requirement for inventory searches) (citing *Colorado v. Bertine*, 479 U.S. 367 (1987))); *see also Stone*, 428 U.S. at 489–94 (discussing the societal costs of applying the exclusionary rule at every stage but especially on federal habeas review). Finding Petitioner's objection to be without merit, I adopt Judge Aboulhosn's findings and recommendation to grant judgment to Respondent on Ground Two.

26

### ii. Ground Three: Violation of Due Process by Admission of Co-Conspirator Statements

In Ground Three, Mr. White asserts a due process violation under the Fourteenth Amendment arising out of the trial court's admission of statements made by his co-defendant, Ms. Osborne. [ECF No. 2, at 8]. Mr. White argues these statements were inadmissible hearsay because the evidence did "not establish the proper foundation of a common plan, conspiracy, or joint enterprise" necessary to introduce Ms. Osborne's statements under West Virginia Rule of Evidence 801(d)(2)(e). After reviewing the procedural history of the issue, the magistrate judge found procedural default. [ECF No. 25, at 35]. I agree, and I reject Mr. White's objection that this ground presents a federal issue cognizable on habeas review in this court.

Judge Aboulhosn found that as with Ground Two, this issue was previously litigated under the Fourth Amendment and therefore procedurally defaulted for multiple reasons. Petitioner never presented his Fourteenth Amendment claim to the West Virginia Supreme Court of Appeals and therefore has failed to exhaust his remedies. And even if the claim were treated as exhausted, Petitioner has not established cause for the default.

As the magistrate judge notes, Petitioner's claim is rooted in the West Virginia Rules of Evidence, but he cites *Bourjaily v. United States*, 483 U.S. 171 (1987), "in an attempt to construe his claim as a violation of federal law." [ECF No. 25, at 35].

Although Mr. White correctly notes that "[t]here are various ways in which the validity of [state law] may be drawn in question on the ground that it is repugnant to the Constitution of the United States," *Street v. New York*, 394 U.S. 576, 584 (1969), I agree with the magistrate judge that Petitioner "cit[ing] *Bourjaily* in his petition for direct appeal," [ECF No. 28, at 5], "is insufficient, [ECF No. 25, at 35]. "Petitioner cited *Bourjaily* for its holding that 'Fed.R.Evid. 801(d)(2)(E) requires proof of the conspiracy by a preponderance of the evidence and allows consideration of the offered declaration as part of the proof of the conspiracy.'" *Id.* at 35–36. But nothing in the record reflects "that Petitioner alleged the admission of the co-conspirator's statement violated . . . federal law." *Id.* at 36. Petitioner focused solely upon the misapplication of a state evidentiary rule, and "[t]he fact that the admitted evidence allegedly was improper under State law, however, does not provide a basis for *habeas* relief." *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules."). Mr. White's objection on this ground simply renews this argument which the magistrate judge already carefully rejected. Accordingly, I adopt Judge Aboulhosn's findings and recommendation to grant Respondent's Motion as to Ground Three.

### iii. Ground Six: Violation of Due Process by Cumulative Error

In Ground Six, Mr. White argues that "[m]any pre-trial, trial, and post-trial constitutional errors were committed by the trial court in its rulings . . . . Although

the errors by themselves may not rise to constitutional deficiencies together, when combined they do reach constitutional violations and the trial court should have granted the Petitioner a new trial after he filed a motion for such." [ECF No. 2, at 9]. In the PF&R, Judge Aboulhosn reviewed the doctrine of cumulative error and found that Petitioner failed to demonstrate individual errors capable of cumulation. [ECF No. 25, at 38]. I agree.

> The Fourth Circuit has described the cumulative error doctrine as follows:

> The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. Generally, however, if a court determines that none of a defendant's claims warrant reversal individually, it will decline to employ the usual remedy of reversing for cumulative error. To satisfy this requirement, such errors must so fatally infect the trial that they violated the trial's fundamental fairness When none of the individual rulings work any cognizable harm, it necessarily follows that cumulative error doctrine finds no foothold.

*United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (internal citations and markings omitted).

"In support of his cumulative error claim, Petitioner alleges that the trial court improperly admitted cellphone evidence, his confession, and hearsay statements." [ECF No. 25, at 38]. But as Judge Aboulhosn found, for reasons explained, *infra*, Petitioner fails to establish that any of the admissions constitute error individually. Accordingly, I agree with the magistrate judge's conclusion that "there is no error to cumulate in this case," *id.*, and I reject Petitioner's objection renewing his position, *see* [ECF No. 28, at 7].

## C. AEDPA Deference: Grounds One, Four, Five, Seven, Eight, Nine, and Ten

The remaining grounds to which Petitioner specifically objected are reviewed under the deferential AEDPA standard because they were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). As stated above, this court may not grant relief unless the state court adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1)–(2). As to each of these claims, the magistrate applied the AEDPA standard and found no error in the state court proceedings for which federal habeas relief may be granted. I agree with the magistrate judge's determinations, for reasons I will now discuss.

### i. Ground One: Violation of Right to an Impartial Jury

In Ground One, Mr. White argues that the trial court "failed to disqualify two prospective jurors, Michelle Lemon and Cassia Scott." [ECF No. 2, at 7]. In his PF&R, Judge Aboulhosn reviewed the state court decisions upholding the trial court's rulings and found no violation of federal law. [ECF No. 48–50]. I agree.

Mr. White expresses concern about Ms. Lemon's personal relationship with the lead detective in Petitioner's case. As to Ms. Scott, Mr. White expresses several concerns, which are addressed in the above discussion of Ground Eleven. Of his three

distinct concerns, only one has not yet been fully resolved: that Ms. Scott "answered ambiguously when informed psychological testimony would be part of the Petitioner's defense." *Id.*

In Mr. White's final state court proceedings, the West Virginia Supreme Court of Appeals found "no indication that either prospective juror Lemon or prospective juror Scott would have been 'unable faithfully and impartially to apply the law'" and therefore "conclude[d] that the trial court did not abuse its discretion in refusing to disqualify them." *State v. White*, 722 S.E.2d at 575. In arriving at that determination, the court noted that "the circuit court concluded that Ms. Lemon's only connection was with the detective's mother," and that "Ms. Scott was clear in stating that she would consider the psychological evidence." *Id.* at 574–75.

After surveying the relevant case law, Magistrate Judge Aboulhosn found Petitioner's claim to lack merit "because there is no evidence that the [Supreme Court of Appeals of West Virginia]'s determination was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts." [ECF No. 25, at 48]. Notably, neither prospective juror was ultimately seated despite the trial court's denial of counsel's motions to strike for cause. Judge Aboulhosn noted the "well established" principle that "a defendant's right to an impartial jury is not violated where a defendant uses a peremptory challenge to remove a potential juror due to the trial court's failure to remove that juror for cause." *Id.* at 49 (first citing *Martinez-Salazar*, 538 U.S. at 304; and then

citing *Ross v. Oklahoma*, 487 U.S. 81 (1988)). Moreover, "[b]ecause peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." *Ross*, 487 U.S. at 89. Accordingly, "[t]o the extent Petitioner argues he had a right to peremptory strikes under State law, such a claim is not cognizable in federal *habeas* corpus." [ECF No. 25, at 50 (citing *Estelle*, 502 U.S. at 67–68) ("[I]t is not the province of a federal habeas corpus court to reexamine state court determinations on state-law questions.")].

In objecting to Judge Aboulhosn's analysis of Ground One, Mr. White asserts arguments based only on state law, not his Sixth Amendment right to an impartial jury. Finding that objection lacks merit, I adopt the magistrate judge's findings and recommendation to grant Respondent's Motion as to Ground One.

### ii. *Brady* Violations: Grounds Four and Nine

In Grounds Four and Nine of his Petition, Mr. White argues that his Fourteenth Amendment rights to due process were violated when the State withheld allegedly exculpatory or impeachment materials, in contravention of *Brady v. Maryland*, 373 U.S. 83 (1963). [ECF No. 2, at 8, 10]. Petitioner alleges the State withheld "certain court records from North Carolina that showed the alleged victim in the case to have been the subject of domestic violence petitions in that state," as well as "a video taken from a surveillance camera close to where the alleged crime took place that contradicted the timeline asserted by the state." *Id.* at 8. The state

courts denied relief. The magistrate judge reviewed the state court determinations under the AEDPA standard and found no grounds for federal habeas relief. [ECF No. 25, at 57–59]. I agree.

The state courts found that the victim's domestic violence records were not material or suppressed, noting that "the State was not in possession of the records in question until **after** the Petitioner's trial," and that "Mr. Clark and the Petitioner have admitted that they were aware of the documents." *White v. Plumley*, 2015 WL 7628834, at *14. The courts similarly found the video was not suppressed given that it "was revealed in the State's discovery packet." *State v. White*, 722 S.E.2d at 583. Moreover, the video was immaterial because Petitioner confessed to the killing and never disputed his presence at Riverfront Park at that time, relying instead on a defense of diminished capacity.

Based on the foregoing, the magistrate judge found the state court decision "was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts." [ECF No. 25, at 57]. I agree, and I reject Petitioner's objection renewing his arguments. I adopt Judge Aboulhosn's findings and recommendation as to Grounds Four and Nine.

### iii.   Ground Five: Insufficiency of Evidence to Convict

In Ground Five, Petitioner argues that his due process rights under the Fourteenth Amendment were violated because there was insufficient evidence to sustain his convictions. [ECF No. 2, at 8–9]. In postconviction proceedings, the state

33

courts affirmed his conviction. Under the AEDPA standard, the magistrate judge found no error in the state courts' determination that sufficient evidence supported the jury's findings of guilt. [ECF No. 25, at 65–68]. I agree.

Mr. White contends that "no direct evidence was ever submitted (none existed) at trial showing some plot between Petitioner and the co-defendant [Ms. Osborne] to conspire to kill the alleged victim," and that the jury's improper findings of premeditation and deliberation—essential elements of his conviction for first-degree murder—"considered inference upon inference rather than an inference based upon the actual scant circumstantial evidence submitted at trial." *Id.* at 9.

With respect to evidence of Petitioner's conspiracy with Ms. Osborne, the state courts found "there was sufficient circumstantial evidence in this case from which the jury could infer that an agreement to kill Mr. Mahrous existed between Mr. White and Ms. Osborne." *State v. White*, 772 S.E.2d at 578. This evidence included: testimony from Ms. Osborne's friend that the co-defendants "had, in her presence, frequently discussed killing Mr. Mahrous"; "numerous telephone calls between Mr. White and Ms. Osborne on the day of Mr. Mahrous's murder, including several that occurred in the hour leading up to and immediately following the murder"; Mr. White's admission to police officers "that Ms. Osborne told him she and her husband were going to Riverfront Park"; and "Ms. Osborne's attempts to conceal the identity of the killer following the murder." *Id.*

34

The state courts similarly found sufficient evidence from which the jury could find premeditation and deliberation. In doing so, the courts explained that "[t]he evidence pertaining to Mr. White's diminished capacity was controverted," and highlighted Mr. White's admissions "that, on the night he killed Mr. Mahrous, he followed Ms. Osborne and Mr. Mahrous to Riverfront Park, and that he approached Mr. Mahrous while carrying a hammer in a white plastic bag." *Id.* at 577.

The magistrate judge found that neither state court finding warrants federal habeas relief under the AEDPA standard. I agree and adopt his recommendation to grant Respondent's Motion as to Ground Five.

### iv.  Ineffective Assistance of Counsel: Grounds Seven and Ten

Unlike those asserted under Ground Eleven, the errors by trial counsel alleged in Grounds Seven and Ten were previously adjudicated in state court proceedings and are therefore reviewed under AEDPA deference. "Petitioner alleged that his trial attorneys (a) failed to adduce evidence that the victim was known to be a man of violence, (b) did not adequately investigate the case because had they done so they would have found domestic violence records from North Carolina that showed the victim in this case had been the subject of several domestic violence petitions (c) did not call Victim's Advocate Melissa Wilkinson to testify regarding a domestic violence petition against the victim[,] (d) did not reveal that the victim had a shoplifting charge, a drug charge, and immigration issues, (e)that the attorneys failed to hire an investigator as promised, and (f) that his trial counsel failed to obtain, investigate,

35

review, and challenge the composition of the grant jury." [ECF No. 28, at 9]. The state courts found that trial counsel's assistance was not ineffective under the *Strickland* standard and the equivalent West Virginia authority. Judge Aboulhosn reviewed the state court determination and correctly found no grounds for federal habeas relief.

In Mr. White's first habeas proceeding, the court held an omnibus hearing at which trial counsel, Mr. Clark, testified about his contested decisions. Mr. Clark explained that an investigator "was not warranted" given Mr. White's confession, the "thorough" investigation by the Sheriff's Department, and the lack of facts in dispute. [ECF No. 16-27]. On habeas review, the circuit court found that "[d]espite not hiring a private investigator, trial counsel *did* fully investigate." [ECF No. 9-15]. Counsel also testified he chose not to pursue arguments related to the victim's past because he thought it would undermine the petitioner's defense of diminished capacity. [ECF No. 16-27 ("My concern was presenting that evidence would have gave motive to the defendant, perhaps greater than he already had, and would lend more credence to the State's theory.")]. The habeas court found that "[t]rial counsel wisely believed that it would be a better strategy to convince the jury that the Petitioner was a mentally ill man, than to try to convince the jury that the victim deserved to be brutally bludgeoned to death." [ECF No. 9-15]. Accordingly, I reject Petitioner's objection that but for counsel's failure to introduce evidence of the victim's history of domestic violence, there is a reasonable probability that the result of the proceedings would have been different. I agree with the magistrate judge's finding that Petitioner's

36

results in state court were "not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts." [ECF No. 25, at 77]. Respondent is entitled to judgment on Grounds Seven and Ten.

### v. Ground Eight: Confession

In Ground Eight, Petitioner asserts a Fourteenth Amendment due process violation in the trial court's admission of his confession, which he argues was coerced. [ECF No. 2, at 10]. Petitioner emphasizes that his confession "was the result of a six hour interrogation in which the Petitioner felt very intimidated and was not free to leave." *Id.* In the PF&R, Judge Aboulhosn applied the AEDPA standard to the state courts' determination that the confession was not coerced, and he found no error for which federal habeas relief may be granted. I agree.

On habeas review, the circuit court determined the confession was not coerced after making the following findings: (1) officers showed Petitioner respect and sympathy throughout the course of the interrogation; (2) officers never threatened Petitioner physically or verbally; and (3) although the interview took place late at night and into the early morning hours, the interrogation was conducted at a time when Petitioner was typically awake because we worked night shifts. [ECF No. 9-15]. The Supreme Court of Appeals adopted and incorporated the circuit court's "well-reasoned findings and conclusions." *White v. Plumley*, 2015 WL 7628834, at *11–13. The magistrate judge found, and I agree, this court cannot disturb the state court decision under the AEDPA standard. *See* [ECF No. 25, at 87—89].

IV.    Conclusion

The court adopts the magistrate judge's PF&R [ECF No. 25], as modified with respect to the analysis of Ground Eleven of Mr. White's Petition [ECF No. 2], and **GRANTS** the respondent's Motion to Dismiss and for Summary Judgment [ECF No. 16]. The court **ORDERS** that Mr. White's Petition is **DISMISSED** and this matter is **STRICKEN** from the docket of this court.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       March 31, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE